1818.

Sloan
vs
Wilson

JUDGMENT AFFIRMED.

JUNE.

SLOAN VS. WILSON.

J S wrote to N W the following letter "The small note you hold of J F for $292, if you will be so good and renew it for him, I will guarantee the payment of it at sixty days."—*Held*, that it is such an agreement as will under the statute of frauds sustain an action against J S for the amount of J F's note, he having failed to pay it.

An agreement to pay the debt of another must be in writing, signed by the party to be charged therewith. There must be a consideration for the promise, and that consideration must be set out in the agreement, and cannot be the subject of parol evidence. The absence of either of these requisites un der the statute of frauds 29 Car. II, are fatal.

Whether J F's note was renewed or not is a matter proper to be left to the jury on the evidence.

APPEAL from Baltimore County Court. *Assumpsit.* The declaration contained three counts. The *first* on a promise by the defendant, (now appellant,) that in consideration of forbearance to pay $292, due from Jacob Fowble to the plaintiff, (the appellee.) The *second count.* The plaintiff, holder of a promissory note drawn on the 16th of September 1806, by *Jacob Fowble*, in favour of the defendant, for $292, payable 90 days after date, the defendant, the payee and endorsor thereof, on the 17th of September 1806, in consideration that the plaintiff would renew the note for other 60 days, and made payable to him the plaintiff, undertook and faithfully promised the plaintiff that if *Fowble* did not pay the note so renewed, at the expiration of the 60 days, that then the defendant would pay the plaintiff the said sum of $292. Averment, confiding in the promise, &c. the plaintiff did, &c. The *third count.* Jacob Fowble, on the 16th of June 1806, made his promissory note, payable and delivered to the defendant, promising to pay him, or order, 90 days after date, $292. That the defendant endorsed and delivered the note to the plaintiff. That on the 16th of September 1806, the defendant, in consideration that the plaintiff would renew the note for *Fowble* for other 60 days, then and there undertook and faithfully promised the plaintiff, that if *Fowble* did not pay the note so renewed at the expiration of the 60 days, that then he the defendant would pay to the plaintiff the said sum of $292. Averment, that confiding, &c. the plaintiff did, on the 17th of September 1806, renew the said note for *Fowble*, whereby *Fowble* promised to pay to the plaintiff, or order, 60 days after date, the said sum of $292, for value received. That at the expiration of the said 60 days, the plaintiff showed the note to *Fowble*, and requested payment, but *Fowble* did not pay, &c. The general issue, and the act of limitations, were pleaded.

At the trial the plaintiff gave in evidence, that *Jacob Fowble* drew a promissory note in favour of the defendant, for the sum of $292, for value received from the defendant, and delivered the note to the defendant, who afterwards endorsed and delivered it to the plaintiff in payment of goods purchased by him of the plaintiff. That the note was put in bank by the plaintiff for collection. That *Fowble*, not being in readiness to pay it, the defendant wrote and delivered to the plaintiff the following note, which

was received by the latter on the 16th September 1806, viz.
"*Baltimore*, 16—, 1806. Mr. *Wilson*. Sir, The small note
you hold of Mr. *Jacob Fowble* for $292, if you will be so
good and renew it for him, I will guarantee the payment
of it at sixty days.

· <em>Jas. Sloan.</em>"

That in pursuance of this request the plaintiff did re-
new the note therein referred to, by taking the note of
*Fowble*, which renewed note is in the words and figures
following:

"$292.          *Baltimore*, September 17, 1826.

Sixty days after date I promise to pay to *Nixon Wilson*,
or order, two hundred and ninety-two dollars, for value
received.

<em>Jacob Fowble.</em>"

Which note was thus endorsed, "*Nixon Wilson.*"
Which last mentioned note was put into bank for collec-
tion by the plaintiff, but was not paid when the same be-
came due, or at any other time.   The plaintiff also gave
in evidence, that the defendant assumed the payment of
the sum of money, for which the suit is brought, within
three years before the issuing the writ in this cause.   The
plaintiff further proved to the jury that *Fowble*, shortly
before or after the renewed note became due, removed from
this state to the state of *Ohio*, where he has continued to
reside ever since; and that when the note was so renewed,
the plaintiff delivered to *Fowble* the note herein first men-
tioned, with the defendant's endorsement thereon.   The
witnesses on the part of the plaintiff also proved, that the
first mentioned note drawn by *Fowble* in favour of the de-
fendant, was drawn payable to the defendant at six months,
according to the best of their recollection and belief, but
that they did not recollect the date thereof.   The defendant
then prayed the court to direct the jury, that this evidence
did not support the declaration in this cause; which di-
rection the Court, [*Bland*, A. J.] refused to give.   The de-
fendant excepted; and the verdict and judgment being for
the plaintiff, the defendant appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHN-
SON, and MARTIN, J.

*Winder*, for the Appellant.  1.  There is a variance be-
tween the engagement alleged in the special count in the
declaration, and that offered in evidence.   The count is
not a legal exposition of the agreement to guarantee.   The
defendant guaranteed that *Fowble* would pay, but not that
if *Fowble* did not pay, he would.   2.  The written memo-
randum, upon which the action is founded, is not such an
"*agreement in writing*" as the statute of frauds requires.
The policy of this statute is best promoted by adopting a
strictly legal interpretation of its provisions; and accord-
ingly the courts of *Great Britain*, and this country, have
preferred such a construction as will give to every word its

1818.

Sloan
vs
Wilson

proper technical signification. *Chaplin vs. Rogers*, 1 *East*, 194. *Chater vs. Becket*, 7 *T. R.* 200. *Anstey vs. Marden*, 4 *Bos. & Pull.* 132. *Grant vs. Naylor*, 4 *Cranch*, 224. The word *agreement*, therefore, used in the clause in the statute which governs this case, must be taken according to its strict legal signification, that is, a *mutual* contract between two or more persons, by which each comes under an obligation to the other, and upon which each acquires a right to what is promised by the other. *Wain vs. Warlters*, 5 *East*, 10. 1 *Pow. on Cont.* 6. 1 *Com. Dig.* 400. The memorandum in this case was not such an agreement—1st. Because it does not contain a good and sufficient consideration. *Wain vs. Warlters*, 5 *East*, 10. *Sears vs. Brink*, 3 *Johns. Rep.* 210, 215. 2d. Because there is neither mutuality of obligation, nor right of action. The engagement was all on one side. The plaintiff was not bound by it; it was, therefore, *nudum pactum*. The contract was altogether executory. *Egerton vs. Matthews*, 6 *East*, 307; and *Cooke vs. Oxley*, 3 *T. R.* 653.

*Hoffman*, for the Appellee. It has been contended on the part of the appellant—1. That the letter from the defendant to the plaintiff is not a sufficient note or memorandum to satisfy the requisitions of the statute of frauds, (29 *Car.* II, *ch.* 2, *s.* 4,) because it was not *signed by both parties*. 2. That there is no *mutuality or reciprocity* of remedy; that if this should be held good as to the defendant, he has no remedy to compel the plaintiff to renew the note. 3. That *no consideration* appears on the face of the letter, and, therefore, is embraced by the decision in *Wain vs. Warlters*, 5 *East*, 10, in which the *consideration* was held to be an integral part of the agreement, and must distinctly appear, and that no evidence *de hors* the writing could be received to disclose the consideration. 4. That the consideration, if any, is *executory*, and no parol evidence should be allowed to show its execution.

1. The objection to a memorandum, under *any* of the sections of the statute, has been considered as finally put to rest by a number of cases. The case of *Champion vs. Plummer*, 1 *Bos. & Pull*, 254, from which the doctrine of *signature by both parties* sprung, was on the 17th section of the statute, which requires, in the sale of goods, a memorandum "signed by the *parties* to be charged by the contract," a phraseology differing from the 4th section, which relates to collateral undertakings, and which requires the memorandum to be "signed by the party to be charged therewith." But even on the 17th section, this doctrine was found, in its practical application, to be highly inconvenient, and sometimes *absurd*, the case was therefore soon *doubted*, then *qualified*, and finally *expressly overruled*. In support of these positions, the court are referred to *Seton vs. Slade*, 7 *Ves* 275. *Coles vs. Trecothick*, 9 *Ves*. 235. *Fowle vs. Freeman, Ibid* 351. *Bailey vs. Og-*

den, 3 *Johns. Rep.* 418. *Egerton vs. Matthews,* 6 *East,* 307. *Roget vs. Merritt,* 2 *Caine's Rep.* 120. *Rob.* on *Frauds, Advir.* VI. *Sugden on Vend. and Pur.* 43, *(note)* In fine, no case can be produced which requires the signature of both parties to a memorandum under the 4th section; the established doctrine is conceived to be, that on all of the sections which require signing, the statute demands no more than the signature of the *party to be charged.* In the case at bar the name of the party to be charged is signed, which *is* all that either the *English* or *American* authorities *now* in any case require.

2. The next objection is equally untenable. The case of *Lawrenson vs. Butler,* 1 *Sch. & Lefr.* 20, does not contradict this assertion. *Stapp vs. Lill,* 1 *Camp.* 242, is, however, decisive on this point. From this, and many other cases which might be cited, it appears that the doctrine of mutuality, contended for, is groundless, and certainly unsustained by authority; for it frequently is the case that no action will lie to compel a performance of *that,* which, when performed becomes a *valid* consideration to sustain a promise. This criterion, by which we are called on to test the responsibility of *one,* by the right of a cross action in the *other,* is, perhaps *specious* but not sound. But the very objection in the present case is founded, on a *petitio principii,* for there can be no reason why the defendant could not have sustained a special action, were there proof of a promise to renew the note.

3. The difficulty which has been raised in this point is grounded on the assumption that no *consideration* appears on the face of the paper, and also from inattention to the controling difference between no consideration, and *some,* though not a very explicit one. In the present case there is a full and adequate consideration *broadly* expanded on the face of the letter, and that nearly every memorandum, to be found in the books as sufficient, is not more explicit, *in its consideration,* than the present. This doctrine has its chief, and only support in the case of *Wain vs. Warlters,* 5 *East,* 10. But that case differs from the one at bar in several material respects. 1st. It will be perceived that in that case the memorandum discloses *no consideration* whatever, it contains nothing more than a mere *nude* promise, which at common law, and, since the statute, can be creative of no legal obligation. But in the case at bar the defendant's letter itself states clearly the consideration of his undertaking, viz. the renewal of *Fowble's* note, as he calls it, for 60 days. 2d. Another difference is, that *Warlters* was an entire stranger to the original transaction. He was never known in it until he came forward, and by his letter promises to pay *Waine & Co.* the amount of *Hall's* acceptance. Not so in the case at bar. It may here also be remarked, that there was no necessity for any consideration proceeding from *Fowble* to the defendant; it is sufficient if a consideration moves from the plaintiff to the defendant, for the defendant would be bound to the plaintiff,

1818.

Sloan
vs
Wilson

were his promise entirely *ex gratia* as to *Fowble*, and though upon that promise no action would lie against him by *Fowble.* A consideration, it should be remembered, is constituted by *any damage*, or any *suspension* or *forbearance* of the plaintiff's right, or any *possibility of a loss* occasioned to the plaintiff by the promise of another, and such promise will be binding, although no *actual benefit* accrued to the *party undertaking*. So in the case at bar; had the *fact* been that the defendant was to receive *no benefit*, he would still have been bound by his promise. *Pillans vs. Mierop*, 3 *Burr.* 1673. 1 *Saund.* 211. b: 2 *Saund.* 136. The cases of *Egerton vs. Mathews*, 6 *East*, 307, and *Sears vs. Brinks*, 3 *Johns. Rep.* 210, were relied on as *confirmatory* of the doctrine of *Waine vs. Warlters*. *Egerton vs. Mathews* occurred on the 17th section of the statute, which requires a memorandum of the *bargain*, signed by the *parties* to be charged. Here the court held that the *bargain* was sufficiently explicit, though *no consideration* was expressed, which they considered would not be the case had the word *agreement* been used, as was the case in *Waine vs. Warlters* on the 4th section. This case is considered to have no application whatever to the case at bar, and if attended to will be found not a little *absurd* in its consequences. The case of *Sears vs. Brinks* is still more harmless than the preceding two. It occurred on the 11th section of the statute of frauds of *New York*, which corresponds with the 4th clause of the 4th section of the statute of frauds of 29 *Car.* II, which relates to the sale of lands. On the memorandum in that case it was held, that the action was not maintained, as the consideration does not appear on the face of the writing. Here the paper appears to contain *no consideration* for taking *Peter Newkirk's* bargain, but none was necessary. This case appears to be subject to the absurd conclusion before noticed, as resulting from *Egerton vs. Mathews.* For this case extends the doctrine of *Waine vs. Warlters* beyond the 1st and 2d clauses of the 4th section, to which Mr. *Roberts* holds it to be confined; whereas it is manifest that the 4th clause, which relates to *land*, and the 17th section, the sale of *goods*, can never require any other memorandum than such as dissolves a bargain for the purchase and sale of land or goods. This case, then, of *Sears vs. Brinks*, has no application, if it be considered that the memorandum discloses no consideration. If it does disclose a consideration, viz. money for the purchase of land, it, like the case of *Egerton vs. Mathews*, has disclosed all the consideration which the statute could demand, even if the sections all used the word agreement. In fine, it may be said, that all of the cases, on this doctrine, which have occurred on any other sections or clauses of the statute, than the 1st and 2d clauses of the 4th section, have gone much beyond the level of the case of *Waine vs. Warlters*, and at the same time when there is not half the necessity for particularity in this respect that there is

1818.

Sloan
vs
Wilson

in cases occurring on the above mentioned two clauses. And it may also be further said, that in all of the cases which have occurred even on these two clauses of the 4th section, the memorandums will be found to contain *no consideration* whatever, and consequently not parallel with the case at bar, which *does* express a consideration. These cases, so much relied on by the counsel for the appellant, being removed out of our way, on the ground that they have no application to the case at bar, let us *gratia argumenti* inquire, whether the cases themselves be of *undoubted authority.* The case of *Waine vs Warlters* is the fountain of this doctrine. It has been at various times *doubted, qualified, extended, restricted, praised, censured* and *denied.* The case of *Stadt vs. Lill,* 9 *East,* 348, is considered to be a clear *qualification* of the generality of the doctrine of *Waine vs. Warlters.* The court there held the plaintiff to be entitled to recover. But the case of *Waine vs. Warlters* has been objected to still further; for in *Minet Exparte,* 14 *Ves.* 183, it is considered of no weight or authority whatever. From the preceding observations it may be briefly stated, that the case at bar stands unaffected by the cases relied on by the counsel for the appellant; and further, that if it came within the very letter of these cases, they are themselves of very questionable authority. The observations on this *third* objection may be closed by a few observations on letters of credit. Letters of credit were well known to the commercial world long anterior to the Stat. 29 *Car.* II. From the enactment of this statute to the year 1804, their validity, in their ordinary phraseology, was never questioned. Soon after the case of *Waine vs. Warlters,* it was perceived that letters of credit might be affected by the doctrine of that case, for in no instance do they state the consideration on which the request is made. In the case of *Stadt vs. Lill,* the court was obliged to qualify the doctrine of *Waine vs. Warlters,* and in *Minet Exparte* to disregard it. So likewise in *Grant vs. Naylor,* 4 *Cranch,* 224, the letter of credit expresses no consideration. But the court would not listen to the doctrine of *Waine vs. Warlters,* nor would they harbour a doubt as to the sufficiency of the written engagement, on any ground arising out of the Statute of Frauds. So also *Eddowes vs. Niell,* 4 *Dall.* 133. *Robbins vs. Bingham,* 4 *Johns. Rep.* 476. Now what is the consideration which sustains all of these *collateral* undertakings? The sole consideration is the delivery of the goods or money to the *writer's* friend. So in the case at bar, all the consideration which is required does appear on the paper, viz. the forbearance to sue the writer's friend *Jacob Fowble,* and the giving of him further time to pay the debt.

4. This objection being *last,* we certainly consider it the least. It is of so little *plausibility* even, that we scarce know how to reply to it. The statute speaks of agreements, promises, undertakings, bargains, but not of the

1818.

Sloan
vs
Wilson

execution of these agreements, &c. Were the *execution* of these agreements required to be evidenced by a writing, more would be demanded than the statute calls for. The statute requires *written* evidence only as to the *existence* of a consideration; the execution of this consideration often *lies in verbis*, and may always be *proved* by parol. In the case at bar *Nicholson*, Ch. J. observed, that "the consideration being executory, and a precedent condition, must be proved by the plaintiff, for although the *consideration* must not lie *in verbis*, the *performance* of this consideration may be proved by parol evidence." The phraseology of the defendant's letter should have put an end to every doubt. He writes to the plaintiff to do an act in favour of his friend *Fowble*, and prejudicial to the plaintiff. Without searching for any consideration *de hors* the letter, we find all the requisite consideration; for it is quite sufficient that by his promise, the plaintiff has subjected himself to the "*possibility of a loss;*" to "*any damage,*" or "*suspension or forbearance of his right.*" The cases of *Nerot vs. Wallace*, 3 *T. R.* 24, and *Pullin vs. States*, 2 *Hen. Black.* 312, are fully in point. It is at once conceded, that it is just as necessary that a sufficient consideration should exist for a written promise, *since* the statute, as before. The common law always required a consideration; the statute adds as a requisite *evidence* in certain cases, that the promise, &c. should be in *writing.* Was not *forbearance* a good consideration prior to the statute? Certainly; for if C had requested A to forbear to sue B, and A had forborne, this was a valid promise at common law. 1 *Roll's Ab.* 27, *pl.* 49. And if such a promise is now made *in writing*, it is good. *King vs. Wilson*, 2 *Stra.* 873.

The present memorandum satisfies every requisition of the statute—for 1st. It is in *writing*, and has sufficient certainty to constitute a promise. 2d. It is signed by the party charged. 3d. The consideration is manifest on the face of the paper. 4. If not, it still materially differs from *Waine vs. Warlters*, and all confirmatory cases—as they contain a mere *nude* undertaking. 5. It has all the reciprocity that the law requires. 6th. The consideration is evidenced in writing, and the *execution need* not be. In nearly every case the consideration will be found to be executory, and no case can be found which sanctions the distinction, in this respect, between executed and executory considerations.

BUCHANAN, J. delivered the opinion of the court. The question raised in this case is, Whether the letter from the defendant below to the plaintiff, of the 16th of September 1806, is such an agreement as will, under the statute of frauds, sustain an action against the defendant for the amount of *Fowble's* note, *Fowble* having failed to pay it? Of which no doubt is entertained.

An agreement to pay the debt of another must be in writing, signed by the party to be charged therewith. There must be a consideration for the promise, and that consideration must be set out in the agreement, and cannot be the subject of parol evidence. The absence of either of these requisites to a good agreement, under the statute would be fatal; but here neither is wanting. The letter to the plaintiff is signed by the defendant; the renewal of *Fowble's* note for $292, is the foundation of the guarantee, and is a good and sufficient consideration, and that consideration appears on the face of the writing. When the renewal took place, the consideration attached, and the liability of the defendant commenced. And whether *Fowble's* note was renewed or not, was a matter proper to be left to the jury on the evidence in the cause.

**JUDGMENT AFFIRMED.**